Eads *v.* Pitkin.

*J. C. Hall* and *D. Rorer*, for appellant.

*H. W. Starr*, for appellee.

———•●•———

## Eads *v.* Pitkin.

The proceeding by attachment is alone authorized by statutory provisions, and can only be maintained by a substantial compliance with the requirements of the statute ; hence an attachment proceeding is not valid unless the requisite affidavit and bond are filed.

An act " to prevent and punish the owners and masters of steamboats," &c. Laws of 1845, p. 43, does not *per see* authorize attachment proceedings. If an attachment is issued as proposed by the sixth section of that act, it must still conform to the general attachment law.

Without a statute expressly authorizing it, a party cannot sue in debt for a tort.

ERROR *to Lee District Court.*

*Opinion by* WILLIAMS, C. J.   This action was commenced
in the district court at Keokuk, Lee County, by Pitkin the
plaintiff, against Eads the defendant to recover damages for
the loss of the barge Pike.   In his declaration the plain-
tiff below designates himself as the owner of the steam boat
Confidence, and as such, complains of William Eads
master of the steam boat Eliza Stewart, of a plea that he
rendered unto him the sum of one thousand dollars lawful
money, &c., which he owes, and unjustly detains from him.
The declaration charges, that on the tenth day of March,
1848, he Pitkin was the owner of a certain barge named
Pike, then situate, lying and made securely fast at the
wharf at Keokuk, at the county and state aforesaid, and
being such owner, the said William Eads, master as afore-
said—while navigating the waters of this state with said
Eliza Stewart,—obtained and used said barge without the
consent of the said Stephen H. Pitkin, for the purpose of
conveying freight from the shore at Keokuk, in the county
and state aforesaid, on board the said Eliza Stewart.   That
after using said barge as aforesaid, the said Eads left it,
in a place different from that from which he had taken it,
to-wit: outside the wharf boat, Links, then lying at the
wharf at Keokuk, exposed in such careless and negligent
manner that said barge was carried away by the current
of the Mississippi river, and ice, and sunk in said river.   By
means of such carelessnnes and negligence, the barge was
wholly lost, and the said Pitkin deprived of the rise of
the same in running the said steam boat Confidence, one
important trip from Keokuk to Galena, Illinois, and back
to St. Louis.   The declaration then concludes in debt in the
usual form, and damages are laid at the sum of one thousand
dollars.

The affidavit of Julian H. Lusk who at the time of the alleged taking and loss of the barge, was master of the boat Confidence, is filed with the plaintiff's declaration, in which it is set forth that the barge was used in running the Confidence on the Mississippi river; and that the facts stated in the declaration are true.

A writ summoning Wiliam Eads master of the steam boat Eliza Stewart, to answer, &c., and also a writ of attachment was issued to attach the boat with all her tackle, &c. The sheriff made return of the writs as follows: Served the within writ May 37, 1848, by attaching the steam boat Eliza Stewart, her tackle, apparel and furniture, appraised at ten thousand dollars, also by reading to William Eads master of said boat.

At September term, 1848, a motion was made to dissolve the attachment for the following reasons.

1. Plaintiff's remedy, if he has any, is by proceeding at common law, and not by virtue of any statute of this state.

2. The plaintiff has not set forth a complaint which authorizes an attachment by writ without a bond with sufficient sureties, &c., and no such bond has been filed in the case.

3. The affidavit required by the statute, before a writ of attachment could legally issue has not been filed.

This motion was overruled by the court. A demurrer to the plaintiff's declaration was also filed, for which the following reasons were assigned:

1. The complaint set forth in the plaintiff's declaration, is not such as that therein the action of the debt will lie, as it does not allege the making of any contract or agreement between the parties, and no consideration is therein stated upon which a contract or agreement can or will be implied.

The demurrer was overruled. Exceptions were taken to the action of the court, overruling the motion to dissolve the attachment and demurrer, and filed on the 26th of

Eads *v.* Pitkin. *

September, the defendant filed his plea of the general issue.

At January term, 1849, the plaintiff, on leave given, filed an amendment to the original declaration by adding two counts, charging that at the time of the taking and using the barge Pike, one William Hight was acting master of the steam boat Eliza Stewart, William Eads being the owner and master, and that the boat was then navigating the waters of this state, &c.

The defendant demurred to the plaintiff's declaration, as amended for the same causes which were assigned with the demurrer to the original one. This demurrer was also overruled, and exception taken and filed.

The general issue was entered to the amended declaration. Upon trial a verdict was rendered for the plaintiff for three hundred dollars and costs, for which judgment was rendered.

We will first consider the question presented on the proceeding by attachment in the case. The proceeding by attachment is only by virtue of the statutory provision of this state, and can only be maintained by a substantial compliance with the requirement of the statute. Under the general attachment law the action must be founded on a *contract*, and before the issuance of the writ, the plaintiff must file an affidavit containing the following requisites:

1. A statement that something is *due* from the defendant to the plaintiff, and nearly as practicable the exact amount.

2. That as deponent verily believes the said debtor is a non-resident of the territory—state,—or that he is in some manner about to dispose of, or remove his property, with intent to defraud his creditors, or that he has absconded so that the ordering process cannot be severed upon him, and that the facts and circumstances, on which belief is founded shall be distinctly stated, and set forth in the affidavit. Rev. Stat. Iowa, p. 78, § 1. A subsequent statute passed

Eads *v.* Pitkin.

and was approved January 17, 1846, amendatory of the foregoing as to the requisites, but does not dispense with them. As there is an entire failure on the part of the plaintiff to comply with the requirements of the statute in filing the affidavit and bond required by the general attachment law, it is clear that under this law, the proceeding cannot be sustained. It is contended, however, that this proceeding is maintainable under the act of June 10, 1845, "to prevent and punish the owners and masters of steam boats committing trespass upon the property of persons living in this state and for other purposes;" Iowa Stat. 1845, p. 43. This is an extraordinary statute, special in its design and penal in character. The three first sections, have no application to a case like this. The fourth section provides, " that if the master or owner of any steam boat as aforesaid, shall at any time hereafter take or cause to be taken any flat, keel boat. or other water craft, from any person in this territory or state, for the purpose of aiding or assisting them in lighting said boat, or in any way conveying freight from or to said boat, or lighting the freight of said boat over either the upper or lower rapids of the Mississippi river, or any bar or shoal or other place on said river, or any river of this territory or state, without the consent of the owner or owners, or in his or their absence and shall refuse to pay a reasonable compensation for the use of said flat, keel boat, or other craft, he or they shall forfeit and pay to the owner or owners thereof, double the amount of what may be considered by the court or jury a proper compensation for the use of such craft, to be recovered by action of debt before any court having competent jurisdiction thereof." This section cannot be held as authorizing the action in the case at bar. It merely makes provision for the recovery of double the amount in compensation of what should be assessed by a court or jury for the use of any boat or water craft taken and used without the consent or in the absence of the owner in case of demand and refusal to pay therefor, and provides

that an action of debt may be maintained to recover that as a penalty for such refusal to pay.

This section treats of a specific matter ; the taking and using of a keel boat or other water craft, without the consent of the owner, the refusal to pay for its use, then the penalty thereby incurrred, and the mode of enforcing that penalty by action of debt.

The fifth section provides for another state of the case in terms sufficiently distinct for application, so as to prevent confusion. It is as follows : " If any master or owner of any steam boat as aforesaid shall obtain any water craft, as aforesaid, either with or without the consent of the owner or owners thereof, and shall lose, injure or destroy the same, or lose or misplace any apparatus belonging to the same, he or they shall be liable for all such damages to the owner or owners thereof."

A liability such as existed at common law is here asserted for the loss of the boat, or injury to it or the appartus without affixing a penalty therefor, or prescribing the form of action by which the redress should be enforced.

The sixth section prescribes the mode of procedure. It is as follows : " All actions brought under the provisions of this act shall be by warrant or attachment, and the master or owner of said boat shall be held to bail in such sum as the court before which the suit is instituted shall require, until all damages shall be paid, together with costs of suit ; *Provided,* all such steam boats as aforesaid, shall be held liable and responsible for all debts and damages arising under the provisions of this act, for a period of time not exceeding two years, and the same shall be a lien on said boat for that length of time, whether said boat shall be sold and transferred, or remain in the possession of the original owner or owners."

We are constrained to confess that this section is somewhat singular in its provisions, viewed in the light of experience in the rules of practice of legal procedure. However

Eads *v.* Pitkin.

it is our duty if it can reasonably be done to enforce its provisions when a case is properly presented. It was doubtless the intention of the legislature to provide a remedy that would be available in remuneration to the owners of keel boats and other water crafts liable to be used by steam boats on our navigable rivers, and to obtain this end deemed it indispensable to enact a law penal in its character, and special in its provisions. They therefore in prescribing the form in which the action should be brought in all cases arising and coming under this law, direct that it shall be by warrant or attachment. Thus the complainant is limited in his election to one or the other of these processes. In the case at bar the party chose to issue the writ of attachment in order to seize the boat, tackle, &c. Having resorted to this mode of procedure it was incumbent on him to comply with the provisions of the attachment law of the state by filing the affidavit therein prescribed, and giving the bond required by that law, before the issuing of the writ. By simply providing that the complainant might proceed in his action by attachment, without prescribing any special mode of procedure different from that which is set forth in the general attachment law of the state, it must be presumed that it was the intention of the legislature, that the requirements of that law should be observed, and strictly pursued. The proceeding by attachment being extraordinary in its nature, and designed for application to secure the ends of justice in cases specified, and when the ordinary process of law would be unavailing, it is not presumable that the legislature would have authorized a plaintiff to resort to it without protecting the interests of the defendant by the usual and necessary guards. To adopt such a presumption would be in contravention of the most manifest principles of reason and right. It would expose a party defendant to a ruinous sacrifice of his property and effects, at the mere will of an attaching complainant. Such a presumption of legislative design would be violent indeed. We therefore to give the

act of the 10th of June, 1845 effect, in enforcing the remedy by attachment as provided therein, construe it as referring to the general attachment law. Such being our conclusion, it follows of course that the complainant should have complied with its requirements by filing the affidavit and bond prescribed in that act before issuing the writ. Rev. Stat. 78, §. 1–5. Having failed to do this, the writ of attachment was issued illegally and should have been dissolved on the motion made by the court below.

Having disposed of the question of the writ, the only point which we deem it necessary to consider and decide, is that touching the form of action adopted by the plaintiff, and set forth in his declaration. The action is in debt. It is urged by the defendant's attorney, that this action will not lie for a tort, and that the complaint is manifestly ex-delicto. It is sufficiently clear that the matter of complaint does not present a case arising ex-contractu, but that it is an injury consequential upon the unauthorized use of a boat or barge claimed by plaintiff as owner, and the loss of it by negligence. That the plaintiff might have resorted to his action at common law for redress is not questionable. Moreover, that the action of debt would not be maintainable for a mere tort is equally clear, independent of statutory provision. The question here is, whether the action of debt is maintainable for the injury complained of under the provisions of the act of June 10, 1845.

Upon examining the act, by virtue of which the plaintiff's attorney contends that this action is brought, it will be seen that the fourth section is specific in its provision. It inflicts a penalty of double the sum assessed by a court or jury against the defendant, for taking and using any other craft without the consent of the owner, upon a demand and refusal to pay a reasonable compensation for such use, to be recovered by action of debt. The 5th § follows with a provision for another state of the case, that is, "the taking of such water craft, with or without the consent of the owner

Eads v. Pitkin.

and the losing, injuring, or destroying the same, or the apparatus thereof, and renders the person so doing, liable for all such damages to the owner, without specially providing the form of action in which he shall be liable." Now, an action at common law, would undoubtedly lie for an injury, such as is treated for in this section independent of the statute. For this court will not by implication extend an act of this kind beyond its special and plain import. This court is bound by the rule of construction to consider the whole enactment, so as to make it operate consistently in execution of its design, giving effect to its several provisions. The 5th § is simply declaratory of a common law right to an action for the wrong therein set forth, but does not prescribe the form of action, as is done in the 4th § where the penalty is prescribed.

The plaintiff has not sued for the penalty under the fourth, but has brought his action on the 5th §, to recover damages for the loss of his boat by the negligence of the defendant. This he might assuredly do. But as the statute is silent as to the form of the action, we think he should have conformed to the practice at common law. In this view of the case, he has certainly mistaken his action. 1 Chitty's Pl. p. 98–99, and note ; 100 and note 1, 115 ; 1 Chitty's Pl., 101–107 ; and note 4 ; Idem. 197. Without a statute enabling him to do so by express terms, he could not sue in debt or a declaration for a tort. If such procedure were allowed by courts, where special and extraordinary, such as the one under consideration are passed, the rights of parties defendants in action would be curtailed in pleading, and they rendered liable thereby to inconvenience and wrong. Courts will not aid by extending or enlarging statutes of this kind. They are generally found to be sufficiently stringent and severe against those on whom they are intended to operate, without adding judicial construction by presumption to special legislative enactment.

Several other points were presented, and decided by the

---

---

court below to which the defendant then excepted. But as there is error in the action of the court by refusing to dissolve the attachment and instructing the jury that the action of debt was maintainable in the case we think it unnecessary to consider them here.

Judgment reversed.

*Johnson & Matthews* and *R. P. Lowe*, for plff. in error.

*L. H. Reeves*, for defendant.